### BATCHELOR *v.* THE STATE.

1. The evidence did not require a charge on the subject of involuntary manslaughter in the commission of an unlawful act. If, upon the basis of facts expressed by the defendant in his unsworn statement before the jury, a charge upon the above question had been desired, there should have been an appropriate written request.
2. The charge complained of in the second special ground of the motion

Criminal Law, 16 C. J. p. 1055, n. 13; 17 C. J. p. 342, n. 91.

Homicide 30 C. J. p. 310, n. 25; p. 336, n. 79; p. 393, n. 95; p. 417, n. 88, 89.

for new trial was a correct statement of one of the contentions of the defendant.

3. The excerpt from the charge complained of in the third special ground of the motion for new trial did not accurately state one of the contentions of the defendant; the charge was not of such character as to confuse the jury, and was not cause for a reversal.

4. The evidence was sufficient to support the verdict, and the judge did not err in refusing a new trial.

No. 5171. MARCH 9, 1926.

Murder. Before Judge Park. Jones superior court. November 23, 1925.

*Allen & Pottle* and *W. M. Bailey,* for plaintiff in error.

*George M. Napier, attorney-general, Joseph B. Duke, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.

ATKINSON, J. J. D. Batchelor was convicted of murder, and the death penalty was imposed. His motion for a new trial was overruled, and he excepted. The person slain was Mrs. Fannie Anderson, the mother of defendant's wife. Mrs. Anderson lived with her husband at their home in Jones County, where the defendant with his wife and children had been staying for some time. The defendant left the Anderson home the day before the homicide, and went to Macon. He returned to the Anderson home early the next morning, and the homicide occurred there almost immediately after his arrival. Two shots were fired from a pistol in the hands of the defendant, one taking effect in the side of the mouth and ranging through the head of Mrs. Anderson and one entering one of her heels and ranging upwards to the knee. She died from the wounds. The only eye-witness who testified at the trial was Myrtle, the nine-year-old daughter of the defendant. This child continued to live with her mother and grandfather in the Anderson home after the homicide until the trial. The mother of the child—defendant's wife and daughter of Mrs. Anderson—was present and saw the homicide, but did not attend the trial, because it was not her desire to do so. The child in giving an account of the homicide testified, in substance: Some time after seven o'clock in the morning she and her mother and Mrs. Anderson were sitting on the porch at the Anderson home, and saw the defendant approach, walking in a natural gait. When he reached the steps he asked Mrs. Anderson, with a smile on his face, where was Mr. Anderson. She replied that he was down in the field. Defendant then told witness to go after him. Mrs. Anderson replied that

witness did not know where to find him, and that if defendant wished to see him he would have to go himself. Mrs. Anderson then got up from the chair in which she had been sitting, and walked a few steps to a post on the porch. While thus standing on the porch and facing the defendant, who was standing on the ground by the steps, he drew a pistol from his bosom and shot her. She staggered first forward, and then fell backward to the floor, flat on her back, and did not speak after being shot. Immediately after this shot witness's mother sprang to her father, who was still on the ground, and put her hand on his shoulder; and he fired a second shot, shooting over her shoulder. The first ball entered Mrs. Anderson's face and passed through her head into the wall; the other struck the floor and passed into her leg, where it remained.

Another witness testified, that, shortly after six o'clock on the morning of the homicide, the defendant, being in Macon, asked witness what time the train would leave for the station at which the Andersons lived, and for the loan of a dollar, and exhibited a pistol, and stated: " 'I want to borrow a dollar from you to go down on,' and said, 'I am going to kill that——— ——— old ——— [woman], and I am going to kill the rest of them as I come to them.' . . He didn't call the names of any of the parties. I didn't know only it was his wife's mother. He said his wife's mother and people were trying to separate him and his wife. He says, 'If I can't live with my wife, no one else shall. I will kill the——— ——— old ——— first, then I will get the rest of them as I come to them.' "

The defendant made a statement before the jury, in which he detailed his previous manner of living and how he had supported his family and aided others, but had finally through misfortune been driven to the necessity of moving with his family temporarily to the Anderson home; that he had been driven from that home by Mr. and Mrs. Anderson, but was finally allowed to spend the night; that on the day before the homicide he left the home for Macon in search of work; that he found work and a place to bring his family to live; that on the morning of the homicide he returned to the Anderson home for his wife and children, and on being again ordered away and threatened to be killed by Mrs. Anderson, he stated to her: " 'No, you won't; before I will be separated

from my wife and baby any longer . . I would prefer to blow my own brains out.' At that time I reached for my gun. It was in my bosom. I reached for my pistol, and my wife grabbed me, and as she grabbed me the pistol first went this way towards her; . that is the way she pulled it. I had to use all the precaution in. the world to keep that gun from killing my wife. . . I twisted the gun back this way, and that is the time the gun went off over her shoulder, and as it went off over [her] shoulder I got the gun back down. I couldn't turn it loose and couldn't give it to her. If I could have given it to her I would have done it; but I couldn't, the way she was wrestling; and as I got it down, that is when the shot was fired and hit the porch. At that time I had broke my hold from hers, and I give her the gun. In the meantime I hadn't seen my mother-in-law from the time the scuffle first started. We were in the yard, I and my wife. I hadn't seen my mother-in-law from the time the scuffle first started until that second shot was fired; and after the second shot was fired, my wife, —I had already given her the gun, and after I had given her the gun I looked and saw my mother-in-law lying on the porch. . . I couldn't swear and. tell the truth [whether] I pulled the trigger or my wife pulled it, but it was an accident any way you want to take it, if it had been her or me; it is an accident, and I had rather it have been me any time than her." The statement then proceeded, referred to other matters, and declared that there was no intention upon the part of the defendant to commit the homicide.

1. The foregoing statement does not set out all of the evidence or all of the prisoner's statement before the jury, but it contains a sufficiency of both to enable the court to deal properly with the grounds of the motion for new trial. The first special ground alleges that the court erred in failing to charge the law of involuntary manslaughter as contained in § 67 of the Penal Code: "Involuntary manslaughter shall consist in the killing of a human being without any intention to do so, but in the commission of an unlawful act." In this ground it is stated: "The jury would have been authorized to believe that while the defendant did not intentionally and with malice aforethought kill the deceased, the killing was the direct consequence and result of the commission of an unlawful act, to wit, carrying a concealed pistol, at the time of

the homicide. The evidence and the defendant's statement did not, as movant contends, demand the conclusion that the killing was deliberate and with malice aforethought." There was no appropriate written request to charge upon this subject, and consequently it would not be error to fail to charge upon the subject on account of any statements made not under oath by the defendant to the jury. The only evidence by an eye-witness to the homicide was the testimony of the defendant's child, Myrtle. That evidence tended to show an intentional killing by shooting the pistol after the defendant had drawn it from its place of concealment in his bosom, and was insufficient to require a charge upon the law of involuntary manslaughter.

2. The second special ground of the motion for new trial complains of the charge: "Now the defendant in this case contends that the pistol that was discharged upon that occasion was the result of misfortune or accident, and that there was no evil design or intention or culpable negligence on his part, and that he did not discharge the pistol intentionally; but he contends at the time that he and his wife were struggling over this pistol, and he contends that, while it was discharged twice, it was entirely the result of accident and misfortune, and he contends that what transpired upon the occasion under investigation was the result of accident and misfortune, and that he would not be guilty of any offense whatever." The criticism upon this charge is: "That said charge was error, in that it in effect instructed the jury that the defendant not only admitted but contended that the pistol was discharged by him twice, whereas in point of fact the defendant contended and insisted that he did not discharge the pistol twice, and didn't know that it had been discharged twice until some time after the death of the deceased, when he was so informed. Movant contends that said charge was error, because it stated to the jury that the defendant admitted a material fact in the case against him. The defendant contended, as stated in said charge by the court, that he did not discharge the pistol at all intentionally, and that it was actually discharged, and that the statement to the jury by the court that the defendant admitted that he discharged the pistol twice was tantamount to saying that the defendant in one breath claimed that he did not discharge the pistol intentionally at all, and in the other breath claimed that he discharged it twice. The

charge quoted unnecessarily, improperly, and illegally emphasized a theory and contention of the State that the defendant deliberately discharged the pistol twice, and unduly and improperly emphasized that contention. The contention that the pistol was deliberately discharged twice necessarily minimized, if it did not negative, the contention of movant that he did not discharge the pistol deliberately at all. Movant contends that said charge was exceedingly harmful to him, and was erroneous under the facts of the case." The charge complained of is not susceptible of the construction placed thereon in the foregoing exceptions. The quotation contained in the statement of facts, from the defendant's statement before the jury, was a part of the defendant's contentions. The charge comports with the defendant's contentions so made, and was not erroneous for any of the reasons assigned.

3. The third special ground of the motion for new trial complained of the charge: "The defendant on the other hand contends that he did not unlawfully and feloniously and with malice aforethought kill and murder Mrs. Fannie Anderson in the County of Jones and State of Georgia on April 28th in the year 1925, and he contends that he did not leave Macon, Ga., for the purpose of inflicting any injury on Mrs. Anderson whatever, and he contends that when he arrived at the home of Mrs. Anderson he intended to take his own life with a certain pistol on account of domestic troubles, and he contends that he and his wife were struggling over this pistol and that the pistol accidentally was discharged, and he contends that there was no evil design or evil intention or criminal negligence, but that what happened upon that occasion was the result of misfortune and accident, and he contends under the law and facts in this case that he would not be guilty of any offense whatever." The criticism upon this excerpt from the charge is: "That said charge was error, in that it erroneously stated as contention of movant that when he arrived at the home of the deceased he entertained at that time the purpose and intention of taking his own life; whereas on the contrary, as movant contends, the contention of the defendant was, as shown by his statement, that after he arrived there, on account of the conduct and language of the deceased to him, he suddenly on the spur of the moment decided to take his own life, and suddenly reached for the pistol, which he had in his bosom, and at that time his wife undertook to take the

pistol from him, and it was accidentally discharged without any intention on his part to discharge it. Said charge was erroneous and harmful to movant, for the reason that the State contended that the killing was deliberate, premeditated and predetermined; whereas on the contrary movant contended that there was no deliberation or premeditation whatsoever, and that the killing happened while he had suddenly made up his mind to take his own life and was attempting to do so. The charge complained of was tantamount to an instruction to the jury that the defendant contended that he deliberately made up his mind to take his own life without any reason upon his arrival at the home of the deceased, and negatived, or at least minimized, the defendant's contention that it happened on the spur of the moment." This charge, in so far as it stated that the defendant "contends that when he arrived at the home of Mrs. Anderson he intended to take his own life," was not a strictly accurate statement of the defendant's contentions as gathered from his statement before the jury, which were to the effect that after arrival at the Anderson home, and upon being ordered away and his life threatened by Mrs. Anderson, he decided to kill himself and drew the pistol for that purpose, after which it was discharged during a struggle for its possession with his wife. While there was a difference in the charge as given and the defendant's contention as stated before the jury, the charge was not calculated to give the jury the impression that the defendant was contending that he acted deliberately in shooting the deceased and not by accident or misfortune. While the instruction could have been more exact, it was not calculated to mislead the jury, and was not cause for reversal.

4. The evidence was sufficient to authorize the verdict, and the judge did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur.*